IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN P. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-00048-GKF-JFJ |
| | ) | |
| KRUGER FAMILY HOLDINGS II, LLC, | ) | |
| an Oklahoma limited liability company; | ) | |
| WARREN F. KRUGER; and | ) | |
| DAVID KRUGER, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the court on the Joint Motion to Dismiss [Doc. 11] of defendants Kruger Family Holdings II, LLC, Warren F. Kruger, and David Kruger. For the reasons set forth below, the motion is denied.

### I. Allegations of the Complaint

The Complaint includes the following allegations. Plaintiff John P. Brown has long been employed in the plastics industry and is skilled in the art of polymer formulations. [Doc. 2, ¶ 7]. Brown met defendants Warren F. Kruger and David Kruger through their involvement in the plastics industry. [*Id.* ¶ 8]. For several years prior to 2013, Brown provided consulting services to the Krugers and their business, Greystone Logistics, LLC, a manufacturer of plastic delivery pallets. [*Id.*].

In 2013, the Krugers became interested in purchasing the assets of a company in receivership—Lexington Logistics, LLC. Lexington's assets included plastics manufacturing equipment, and the Krugers planned to use those assets in a new entity, Trienda. [*Id.* ¶ 9]. The Krugers anticipated that Trienda could utilize the Lexington equipment in conjunction with a

formula developed by Brown to produce less expensive plastic resin ("Brown Formula"), and wanted Brown to go into business with them. [*Id.*]. To that end, Brown, the Krugers, and Kruger Family Holdings II, LLC[1], negotiated a Memorandum of Agreement ("Agreement").[2] [*Id.* ¶ 10]. Per the Agreement, Brown provided a $250,000 loan to defendants, which allowed defendants to obtain financing for the Lexington asset purchase. [*Id.*]. Upon the closing of the asset purchase, the loan was converted to purchase twelve percent (12%) equity in Trienda. [*Id.*; *see also* Doc. 2-1, § 2.2]. Brown serves as the Chief Executive Officer of Trienda and David Krueger is Trienda's President. [Doc. 2, ¶ 10]. Ownership of Trienda was transferred to Kruger Brown Holdings, LLC ("Kruger Brown") and Brown holds a minority interest in Kruger Brown. [*Id.*]. Brown asserts that "[t]he business relationship between Brown and Defendants amounts to a joint venture." [*Id.* ¶ 29].

The Agreement further provided "[t]hat BROWN is to receive 1 USD ccp (cent per pound) royalty, in perpetuity, on any resin material black master batch produced on behalf of Trienda Holdings LLC." [*Id.* ¶ 11; Doc. 2-1, § 3.1(d)]. The Complaint alleges the royalty provision "was the lynch pin of [Brown's] agreement with the Krugers," and that, "[w]ithout the royalty payments, Brown would never have agreed to go into business with the Krugers." [Doc. 2, ¶ 12]. Brown alleges that defendants agreed to Brown's royalty demand because Brown's expertise and involvement was "necessary to induce Defendants' lenders to provide financing." [*Id.* ¶ 13].

After the Lexington asset purchase closed, extrusion, conveying, and storage equipment, now owned by Trienda, was installed at the Greystone Logistics facility. [*Id.* ¶ 14]. There, Brown

---

[1] For ease of reference, the court refers to defendants Kruger Family Holdings II, LLC, Warren F. Kruger, and David Kruger, collectively, as "defendants."

[2] Brown attached the Agreement as "Exhibit 1" to the Complaint and therefore the Agreement is "a part of the pleading for all purposes." FED. R. CIV. P. 10(c).

alleges that, as a result of hundreds, if not thousands, of hours of work by Brown, the Brown Formula was successfully implemented, and resin was produced for resale to Trienda. [*Id.*]. The price for the Brown Formula resin sold to Trienda included a markup for the royalty payable to Brown. [*Id.* ¶ 15]. Brown alleges royalty payments were "slow to begin," but that he eventually began receiving royalties on the Greystone-produced Brown Formula resin resold to Trienda. [*Id.*].

Meanwhile, Brown oversaw the design and installation of equipment necessary for producing the Brown Formula resin at Trienda's facility. [*Id.* ¶ 16]. Shortly after the Trienda process was up and running, in December 2017, David Kruger informed Brown that Brown would no longer receive royalty payments provided for in the Agreement. [*Id.*]. David Kruger took the position that Brown had waived his right to the royalty payments. [*Id.*].

Brown alleges that he never signed any document to modify the Agreement. [*Id.* ¶ 17]. Further, prior to Brown completing the installation of the equipment to produce the Brown Formula at the Trienda facility, the Krugers allegedly did not mention to Brown that he had "somehow waived" his royalty right and would no longer be receiving royalty payments on the Brown Formula resin produced by Trienda. [*Id.*]. Brown asserts that defendants never informed him of their intent to stop paying his royalty and "never mentioned to [him] that his royalty rights might be impacted by various Trienda transactions—until after Brown had completed installation of equipment necessary to produce the Brown Formula resin at Trienda." [*Id.* ¶ 30].

Based on the foregoing allegations, Brown asserts three claims: (1) breach of contract; (2) unjust enrichment; and (3) breach of fiduciary duty. [*Id.* at pp. 4-5]. Brown also seeks a declaratory judgment that the Agreement is a valid contract between Brown and the defendants,

and explicitly provides that Brown is entitled to royalties on the Brown Formula resin produced on behalf of Trienda in perpetuity. [*Id*. at p. 6].

## II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court accepts as true all factual allegations, but the tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III. Analysis

As previously stated, Brown asserts three claims for relief: (1) breach of contract; (2) unjust enrichment; and (3) breach of fiduciary duty. Defendants seek dismissal of the unjust enrichment and breach of fiduciary duty claims. The court separately considers each claim, and first considers the breach of fiduciary duty claim.

### A. *Breach of Fiduciary Duty*

Defendants move to dismiss the breach of fiduciary claim, arguing that, under Oklahoma law, parties to an arms-length, commercial transaction do not owe each other fiduciary duties, and that Brown's references to "good faith" seek to improperly "tortify" what amounts to a simple breach of contract. Defendants' motion to dismiss asserts that Brown fails to allege any special relationship to justify the imposition of tort liability. In response, Brown points to his allegation

that "[t]he business relationship between Brown and Defendants amounts to a joint venture" and therefore that defendants owed fiduciary duties to Brown.

Defendants' motion does not address or even acknowledge Brown's allegation that the business relationship between the parties constituted a joint venture. It well-established that, under Oklahoma law, a "joint adventurer occupies a fiduciary position with respect to the other members and owes a higher and greater duty to them than he owes to one with whom he deals at arms length." *Oklahoma Co. v. O'Neil,* 440 P.2d 978, 984 (Okla. 1968).[3]

To contend with the allegation of joint venture, in reply, defendants point the court to Oklahoma case law distinguishing between contract and tort claims, and prohibiting a plaintiff from transforming an ordinary breach of contract into a tort. *See* [Doc. 18, p. 3 (citing *Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1226-27 (Okla. 1988); *Warrenfeltz v. Hogan Assessment Sys., Inc.*, No. 17-CV-428-GKF-FHM, 2018 WL 1546559, at *2 (N.D. Okla. Mar. 29, 2018); *KT Specialty Distrib., LLC v. Xlibris Corp.*, No. 08-CV-0249-CVE-SAJ, 2008 WL 4279620, at *4 (N.D. Okla. Sept. 11, 2008))]. First, those cases relate to the tort of breach of the implied duty of good faith and fair dealing, a claim not pled by Brown, rather than breach of fiduciary duty. Further, in those cases, the courts emphasized the absence of allegations of a "special relationship, that is, "an independent basis to support a tortious wrongdoing." *See Rodgers*, 756 P.2d at 1226-27; *Warrenfeltz*, 2018 WL 1546559, at *3; *KT Specialty Distrib., LLC*, 2008 WL 4279620, at *4.

---

[3] The court notes that the Agreement contains a choice-of-law provision in favor of the laws of the Province of Quebec, Canada. However, both Brown and defendants rely on Oklahoma law with respect to the breach of fiduciary duty claim. Thus, for purposes of this motion only, the court presumes that Oklahoma law applies to the breach of fiduciary duty claim.

Here, Brown alleges the existence of a "special relationship"—that of a joint venture.[4] Thus, the court turns to whether Brown plausibly alleges the existence of a joint venture.

The Supreme Court of Oklahoma defines a joint venture as "an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit." *Martin v. Chapel, Wilkinson, Riggs, & Abney*, 637 P.2d 81, 85 (Okla. 1981). "The essential criteria for ascertaining the existence of a joint venture relationship are: (1) joint interest in property, (2) an express or implied agreement to share profits and losses of the venture and (3) action or conduct showing cooperation in the project." *Id.*

*First*, Brown alleges that he and defendants negotiated the Agreement, pursuant to which Brown provided a loan to defendants, which was then converted to a twelve percent minority interest in Trienda. [Doc. 2, ¶ 10]. According to Brown, ownership of Trienda was transferred to Kruger Brown Holdings, LLC and now he holds a minority interest in Kruger Brown. [*Id*.]. Further, Brown alleges that he provided the Brown Formula for use by Trienda. [*Id.* ¶ 15]. Thus, the Complaint includes allegations that Brown and the defendants hold a joint interest in property, satisfying the first element.

*Second*, an agreement to share profits and losses may be either express or implied. *O'Neil*, 440 P.2d at 984. Here, Brown alleges an equity interest in Trienda and, further, that Brown was to receive a royalty, in perpetuity, on any resin material black master batch produced on behalf of Trienda. [Doc. 2, ¶ 11; Doc. 2-1, §§ 1.3 and 3.1(d)]. Further, Brown asserts that he invested

---

[4] In the only case cited by defendants wherein a plaintiff sought to rely on joint venture principles to support a breach of fiduciary duty claim, the relevant contract expressly stated "[n]othing herein shall be construed as to create any partnership, joint venture, fiduciary or employment relationship between the parties." *Multimedia Games, Inc. v. Network Gaming Int'l Corp.*, No. 98-CV-67-H(M), 1999 WL 33914442, at *8 (N.D. Okla. Sept. 3, 1999). The Agreement contains no similar provision.

"hundreds, if not thousands, of hours of work" to implement the Brown Formula at the Greystone Facility and produce resin for resale to Trienda, and that he oversaw the design and installation of equipment necessary for producing the Brown Formula resin at Trienda's facility. [Doc. 2, ¶¶ 14 and 16]. Based on these allegations, the court may reasonably infer that Brown possessed a working interest in the joint venture and would suffer some loss by virtue of its failure. *See Martin*, 637 P.2d at 86; *Brown v. Thompson*, 413 P.3d 900, 904-05 (Okla. Civ. App. 2017) ("[T]he 'loss' element of a joint venture agreement is satisfied where a party is 'in a position to sustain an actual loss by the failure of the enterprise.'") (quoting *Boren v. Scott*, 928 P.2d 327, 328 (Okla. Civ. App. 1996)); *Dubach, Inc. v. Lucky Ace Petroleum, L.L.C.*, No. CIV-05-050-JHP, 2006 WL 1966592, at *3 (E.D. Okla. July 11, 2006) (denying motion for summary judgment and noting losses can be measured in non-monetary terms such as lost time and effort). Thus, the allegations of the Complaint satisfy the second element.

*Third*, the Complaint includes allegations from which the court may reasonably infer "action or conduct showing cooperation in the project." *Martin*, 637 P.2d at 85. As previously stated, Brown alleges the following: that he provided a loan to defendants to allow defendants to obtain a minority interest in Trienda, which was then transferred to Kruger Family Holdings such that Brown holds a minority interest in Kruger Family Holdings [Doc. 2, ¶ 10]; Brown is the CEO of Trienda and David Kruger serves as Trienda's President [*Id.*]; the Krugers wanted to go into business with Brown to utilize the Brown Formula along with assets acquired from Lexington; [*Id.* ¶ 9]; Brown's expertise was necessary to induce defendants' lenders to provide financing [*Id.* ¶ 13]; Brown implemented the Brown Formula to produce resin for resale to Trienda and oversaw the design and installation of equipment necessary for producing the Brown Formula resin at Trienda's facility [*Id.* ¶¶ 14 and 16]. Thus, Brown plausibly alleges a joint venture.

Because Brown alleges sufficient facts from which the court may infer the existence of a joint venture, Brown sufficiently alleges a special or fiduciary relationship—that is, an independent basis for tort liability. Thus, Brown's breach of fiduciary duty tort claim is not precluded.

Further, Brown includes allegations of tortious conduct outside the scope of the Agreement. Specifically, Brown alleges that defendants breached the fiduciary duties owed to Brown as joint venturers by failing to inform Brown "that his royalty rights might be impacted by various Trienda transactions—until after Brown had completed installation of equipment necessary to produce the Brown Formula resin at Trienda." [Doc. 2, ¶ 30]. Defendants point to no provision in the Agreement requiring defendants to explain the import of various Trienda transactions. Rather, the parties status as joint venturers requires "the utmost good faith in all the dealings of the parties with each other," *Rockett v. Ford*, 326 P.2d 787, 791 (Okla. 1958) (quoting *Vilbig Constr. Co. v. Whitham*, 152 P.2d 916 (Okla. 1944)), including the "highest degree of fidelity, loyalty and fairness in their mutual dealings." *C.H. Codding & Sons v. Armour & Co.*, 404 F.2d 1, 4 (10th Cir. 1968) (citing *Rockett*, 326 P.2d at 791). Thus, Brown's breach of fiduciary duty claim is premised, in part, on alleged misconduct separate than the breach of contract.

For the foregoing reasons, Brown does not seek to improperly "tortify" a breach of contract through the breach of fiduciary duty claim. Rather, Brown plausibly states a claim for breach of the fiduciary duties amongst the parties as joint venturers. Defendants' motion to dismiss this claim is denied.

B.   *Unjust Enrichment*

The court next considers Brown's unjust enrichment claim.[5] Defendants contend that Brown cannot state a plausible claim for unjust enrichment because unjust enrichment is only available when the plaintiff has no adequate remedy at law, and Brown has an adequate remedy by virtue of his breach of contract claim and request for declaratory relief. In response, Brown argues that he is entitled to plead alternative theories.

The parties point to what, on their face, appear to be conflicting opinions by this court with respect to a litigant's ability to plead an equitable claim for unjust enrichment as an alterative to a legal claim for breach of contract. *Cf. Horton v. Bank of Am., N.A.*, 189 F. Supp. 3d 1286 (N.D. Okla. 2016) *with Baker Hughes Oilfield Operations, LLC v. Iron Hawk Energy Grp. Joint Venture*, No. 17-CV-00652-GKF-JFJ, 2018 WL 3298072 (N.D. Okla. June 13, 2018).

In *Horton*, plaintiffs asserted claims for breach of contract and unjust enrichment, among other claims, arising out of a dispute over plaintiffs' residential mortgage. The mortgage required monthly payments of $370.33 beginning on February 1, 1986 and a final payment of any unpaid balance by January 1, 2016, and permitted an adjustable interest rate provided written notice was provided to plaintiffs on or before the change date. Plaintiffs never received notice of a rate adjustment but, shortly before their final payment, plaintiffs received notice that a balloon payment was required. *Horton*, 189 F. Supp. 3d at 1288-89. With respect to the unjust enrichment claim,

---

[5] Neither party directly addresses choice-of-law with respect to the unjust enrichment claim. Citing the most significant relationship test for torts, defendants assert that Oklahoma law "applies to any tort claims." [Doc. 11, p. 3 n.2]. However, under Oklahoma choice-of-law principles, "the law of each state where the services were rendered governs any claim for unjust enrichment." *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1036 (Okla. 2006). "The elements of unjust enrichment claims differ markedly from state to state." *Id.* Because the parties do not directly address the issue, based on the parties' submissions, the court cannot ascertain where the services were to be performed and therefore the applicable state law. Accordingly, *for purposes of this motion only*, the court presumes that Oklahoma law applies to the unjust enrichment claim.

the court noted that defendant pointed to the existence of a valid contract, and plaintiffs contested neither the validity of the parties' mortgage contract nor the applicability of the contract to the dispute. Instead, plaintiffs alleged only that "BANA collected more money under the mortgage than it was contractually entitled." *Id.* at 1290. Because plaintiff could recover improperly collected funds through the breach of contract claim, an adequate remedy at law existed and the unjust enrichment claim was subject to dismissal. *Id.*

In contrast, in *Baker Hughes*, plaintiffs furnished goods, materials, supplies, machinery, equipment, and labor to defendant in connection with defendants' oil and gas operations. When defendants failed to pay amounts due, plaintiff asserted a breach of contract and, further, to foreclose on various liens and security interests. *Baker Hughes Oilfield Operations*, *LLC*, 2018 WL 3298072, at *1. However, defendants in that case disputed the applicability of the lien agreements, as well as the continued validity of the contract.

It is true that Brown asserts that a valid contract exists between the parties—specifically, the Agreement as attached as Exhibit 1 to the Complaint. *See* [Doc. 2, ¶ 20; Doc. 2-1]. However, the Complaint includes allegations from which the court may reasonably infer that modifications were made to the Agreement, which Brown contends were invalid. *See* [Doc. 2, ¶ 30]. In fact, defendants concede that the Agreement was subsequently amended and/or superseded. [Doc. 11, p. 1]. Thus, unlike *Horton*, the parties in this case do not agree as to the applicable contractual agreement, if any. Further, Brown seeks equitable relief beyond the royalties allegedly owed under the Agreement, including disgorgement of profits. Defendants do not contend that Brown would be entitled to disgorgement of profits under the Agreement.

Further, other cases relied on by defendants are distinguishable. In their reply brief, defendants cite an Oklahoma Supreme Court decision for the proposition that "a party is not

entitled to pursue a claim for unjust enrichment when it has an adequate remedy at law for breach of contract." [Doc. 18, p. 4 (citing *Am. Biomedical Grp., Inc. v. Techtrol, Inc*., 374 P.3d 820, 828 (Okla. 2016))]. However, *American Biomedical* was determined in the context of a motion for partial summary judgment, not a motion to dismiss. Additionally, defendants rely on an unpublished decision by a Tenth Circuit panel applying the rule in the context of a motion to dismiss. *See Parrish v. Arvest Bank*, 717 F. App'x 756, 765 (10th Cir. 2017). However, in that case, the district court dismissed the unjust enrichment claim for failure to allege any conduct constituting a breach of its agreement with plaintiff or a fiduciary duty, or any violation of applicable regulations and customary banking practice. [Doc. 59, *Parrish v. Arvest Bank*, No. CIV-15-0913-HE (W.D. Okla. Jan. 17, 2017)]. On appeal, the plaintiff did not address the defendant's argument that unjust enrichment damages are not available where an enforceable contract governs the parties' relationship and presented no argument as to why to the general principle articulated in *American Biomedical* did not bar her claim. *Parrish,* 717 F. App'x at 765. Because the district court did not dismiss the claim based on the availability of a legal remedy, and plaintiff failed to address the issue on appeal, *Parrish* is not persuasive.

Finally, the court notes a line of case law, relied on by this court in *Baker Hughes*, standing for the principle that "Oklahoma procedure clearly permits pleading alternative remedies, just as it allows alternative theories of recovery, as long as plaintiffs are not given double recovery for the same injury." *See, e.g., Hitch Enters., Inc. v. Cimarex Energy Co*., 859 F. Supp. 2d 1249, 1258 (W.D. Okla. 2012) ("[W]hile the plaintiffs will not be permitted to receive double recovery, . . . they will be permitted to pursue these alternative theories of recovery and seek both legal and equitable relief at this stage."); FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in

separate ones."). Thus, under the circumstances and facts of this case, the court concludes that Brown is entitled to pursue alternative theories of relief and the unjust enrichment claim does not warrant dismissal.

**IV.     Conclusion**

WHEREFORE, the Joint Motion to Dismiss [Doc. 11] of defendants Kruger Family Holdings II, LLC, Warren F. Kruger, and David Kruger is denied.

DATED this 28th day of August, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE